OPINION

Kristin PONESSI, an infant by her Mother and Natural Guardian, Margaret PONESSI and Margaret Ponessi, Plaintiffs,

v.

AMERICAN GOLD STAR MOTHERS, Defendant.

No. 89 Civ. 0221(GLG).

United States District Court, S.D. New York.

Nov. 22, 1989.

Finkelstein, Kaplan, Levine, Gittelsohn & Tetenbaum (George A. Kohl, II, of counsel), Newburgh, N.Y., for plaintiffs.

Quirk and Bakalor, P.C. (Robert E. Quirk, of counsel) New York City, for defendant.

GOETTEL, District Judge.

This is an action to recover damages for personal injuries sustained by the plaintiff Kristin Ponessi when she was struck by a dart at the Picnic in the Park Fair held in the Village of Wappingers Falls, New York. The dart game at which the plaintiff was injured was sponsored by the Poughkeepsie chapter of the American Gold Star Mothers.[1] The American Gold Star Mothers is a national, not-for-profit organization created by Act of Congress, 36 U.S.C. §§ 2401–2415 (1982), and is composed of mothers whose children have been killed in the service of the United States of America.

The plaintiffs commenced this action against the national headquarters of the American Gold Star Mothers, contending that it is liable for the negligence of its local chapters. The defendant has moved for summary judgment.

Contrary to the suppositions of this court, the primary issue on this motion—whether the national headquarters of a benevolent organization can be held liable for the acts of its local chapters—appears to be unresolved in the courts. Indeed, an exhaustive (and exhausting) research effort exposed only two cases that are even remotely instructive. In *O'Hare v. Tradewinds Corp.*, 499 N.Y.S.2d 784 (2d Dep't 1986), the plaintiff sued, *inter alia*, the Freeport Boatmen's Association ("FBA"), a nonprofit corporation composed of independent charter boat operators, for the wrongful death of a passenger of a charter vessel, the captain of which was a member of the defendant organization. In upholding the grant of the defendant's motion for summary judgment, the court found that

FBA did not supervise or control in any manner the operation or management of its members' vessels, and the evidence in

1. An initial action, commenced in state court by the plaintiffs against the Village of Wappingers Falls, the Poughkeepsie chapter of the American Gold Star Mothers and various organizers of the Picnic in the Park, was settled prior to the commencement of this action. It appears that the Poughkeepsie chapter did not participate in the settlement as it is without assets. In this action, only the National Headquarters of the American Gold Star Mothers is named as a defendant.

the record shows that FBA's only connection with the charter group was that the charter reservation was made at its office and that its letterhead is on the booking sheet, a copy of which went to the charter group. All moneys were paid directly to the vessel operator, and none was shared with FBA.

*Id.* at 785. As a result of these findings, and the plaintiff's failure to counter these conclusions with evidentiary proof of the defendant's involvement, the court held that summary judgment was properly granted to the defendant organization. *Id.* Thus, the court focused on the extent of the defendant's participation in its members' affairs to determine whether the defendant could be held liable for its members' tortious conduct.

The court in *D'Amore v. American Legion, Amity Post No. 791*, 27 Misc.2d 937, 214 N.Y.S.2d 70 (Sup.Ct.1961), reached a similar conclusion. In *D'Amore*, the plaintiff sustained injuries while attending a dance conducted under the auspices of a local chapter of the American Legion. The American Legion, named as a defendant in addition to the local post, moved for summary judgment. The court granted the motion, finding that the national organization could not be held liable for the actions of its local post.

The American Legion is a corporation organized under Act of Congress (36 U.S. C.A. §§ 41–51). It is an independent entity separate and distinct from local chapters and posts which receive their charters from state or territorial departments. A chapter or post is deemed to be "a corporate entity for the purpose of making contracts, incurring liabilities, and acquiring rights, and of suing and being sued in the courts of this state in its own name" (Benevolent Orders Law, § 3–a).... Absent any showing that The American Legion participated in or had any connection with the function at which plaintiff was injured, it is not answerable for acts or omissions, if any, of the local post.

*Id.* 214 N.Y.S.2d at 71. The court placed considerable reliance on the New York Benevolent Orders Law. Section 3–a of the Benevolent Orders Law, quoted above, applies to organizations entitled to file a certificate of election of trustees under section 2 of the Article. That section sets forth a seemingly exhaustive list of qualified benevolent organizations, of which the American Gold Star Mothers is not a member. N.Y.Ben.Ord. § 2 (1951 & Supp.1989).[2] Nonetheless, in the absence of authority to the contrary, we consider the decision in *D'Amore* and section 3–a of the Benevolent Orders Law to be instructive. The American Gold Star Mothers, like the American Legion, is a benevolent corporation organized under an Act of Congress. Both organizations maintain a three-tiered structure including a national headquarters, regional departments and local chapters.[3] Moreover, the national headquarters of both of the organizations typically have little to do with the day-to-day operations of their local chapters.[4]

The plaintiffs contend that the local chapters of the American Gold Star Mothers do not have an existence independent of the national organization.[5] Thus, they ar-

**2.** The criteria for inclusion in the section 2 list are not delineated. Thus, it is unclear whether the American Gold Star Mothers would qualify as a benevolent organization under New York law.

**3.** The local chapters of the American Gold Star Mothers are chartered by the National Executive Board but function under the jurisdiction of territorial departments. American Gold Star Mothers Constitution Article III, § 2. The Poughkeepsie chapter of the American Gold Star Mothers is within the New York department.

**4.** The deposition testimony of Helene Hoag, the President of the Poughkeepsie chapter, reveals that the national headquarters of the American Gold Star Mothers retained no insurance coverage for its local chapters. Thus, it is apparent that the national headquarters did not consider itself liable for the actions of its local chapters. Although certainly not conclusive, this fact helps demonstrate the division between the national headquarters and the local chapters.

**5.** The plaintiffs cite numerous sections of the American Gold Star Mothers Constitution and By-laws in support of their contention that the national and local divisions are but one organization. While we find these sections to be instructive, they do not conclusively establish the liability of the parent organization.

gue that as a single legal entity, the national organization is responsible for the negligence of its members in the performance of the organization's business.[6] They apparently do not dispute the defendant's contention that the national headquarters had nothing to do with the establishment or execution of the fund-raising event that injured Kristin Ponessi.

We think it impossible to determine the possible liability of the American Gold Star Mothers without reference to the extent of their involvement in the activity at issue. As the American Gold Star Mothers is not a specifically identified benevolent organization within the ambit of New York's Benevolent Orders Law, we cannot say, as a matter of law, that the local chapter is "deemed to be a corporate entity for the purpose of ... incurring liabilities." N.Y. Ben.Ord. § 3–a (1951). Nor can we say that, based on the Constitution and By-laws of the national organization, the American Gold Star Mothers is absolutely liable for the negligence of its chapter members. Rather, as was done in the two cases cited above, we must inquire into the involvement of the national headquarters in the affairs of the local chapter.

In their affidavit in opposition to the defendant's summary judgment motion, the plaintiffs implicitly concede that "the national organization did not have knowledge of or an interest in, the local chapter's fund raising activities." Kohl Affidavit, ¶ 12. The deposition testimony of Winona Tucker, the National Custodian of Records for the American Gold Star Mothers and Helene Hoag, the President of the Poughkeepsie chapter, confirm that the national office has no involvement whatsoever in the fund-raising activities of the local chapters. The national headquarters neither participates

in the planning or operation of the fund-raising efforts nor receives any of the proceeds of such activities. The laissez-faire approach of the national organization is not limited to fund-raising but extends to the day-to-day activities of the local chapters. There can be no dispute that the national headquarters of the American Gold Star Mothers was completely ignorant of the dart-throwing booth set up by its Poughkeepsie chapter at the Wappingers Falls Picnic in the Park.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Resolution of this motion in the defendant's favor requires neither a balancing of the evidence nor an assessment of witnesses' credibility. The uncontested proof demonstrates that the American Gold Star Mothers was in no way involved in the events giving rise to this cause of action. This case cannot be resolved, as the plaintiffs urge, without reference to the relative involvement of the national and local divisions of the American Gold Star Mothers. The only applicable legal authority instructs that an inquiry must be made into the participation of the national organization in the relevant activities of the local chapter. Having made that inquiry, we conclude that the American Gold Star Mothers cannot be held to answer for the negligent actions of its members. A rule that would hold a remote parent organization strictly liable for the actions of its members would be unworkable and would severely curtail the independence of local organizations. In the absence of legal precedent, we choose not to create such a rule in this case. Consequently, the defendant's motion for summary judgment is

---

**6.** The plaintiffs base this argument in part on one of the stated objectives of the American Gold Star Mothers, namely, to give aid to veterans and Veterans Administration medical centers with voluntary service and monetary and material contributions. Because the money raised in the dart game that injured the infant plaintiff was earmarked for Veterans Administration hospitals, the plaintiffs contend that the Poughkeepsie chapter was furthering the busi-

ness of the national organization. The national headquarters, however, received none of the proceeds of the fund-raising activity. The proceeds of the activity were used to purchase supplies for veterans hospitalized in one of six New York Veterans Administration hospitals. Rather than supporting the plaintiffs' position, we think this factor emphasizes the disparate nature of the national and local divisions of the American Gold Star Mothers.

granted. The clerk will enter judgment for the defendant.

SO ORDERED.